IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-01155-PAB-MDB

MARGARET LIGOTTI,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

# ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. Docket No. 24.  Defendant Allstate Fire and Casualty Insurance Company ("Allstate") seeks an order dismissing all of plaintiff, Margaret Ligotti's claims.  *Id.* at 1-2.  Plaintiff Margaret Ligotti filed a response opposing Allstate's motion for summary judgment, Docket No. 31, and Allstate filed a reply.  Docket No. 32.  The Court has jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND

### A. Undisputed Facts[1]

On April 26, 2019, Ligotti was involved in a car accident (the "accident").  Docket No. 24 at 2, ¶ 1.  At the time of the accident, Ligotti was driving a car owned by her employer and insured by Farmers Insurance.  *Id.*, ¶ 2; Docket No. 31 at 4.  The policy provided by Farmers (the "Farmers Policy") provided underinsured motorist ("UIM")

---

[1] The following facts are undisputed unless otherwise indicated.

benefits of up to $1,000,000. Docket No. 24 at 2, ¶ 3. At the time of the accident, Ligotti was also a named insured under a policy issued by Allstate (the "Allstate Policy") which provided UIM benefits of up to $100,000. *Id.* at 3, ¶ 4.

Ligotti settled with the at-fault party from the accident (the "tortfeasor") for the limits of the tortfeasor's liability insurance, $25,000. *Id.*, ¶ 5. Ligotti settled a claim for UIM benefits under the Farmers Policy for $575,000. *Id.*, ¶ 6. After Ligotti settled her claim with the tortfeasor, she made a demand that Allstate provide her with her policy limit of $100,000. *Id.*, ¶ 7. More than four months after Ligotti made her demand, Allstate denied Ligotti's claim, relying on an opinion of Allstate's counsel that no UIM benefits were due to Ligotti because the Allstate Policy provided coverage in excess of the Farmers Policy. Docket No. 31 at 4.

### B. Contract Language

The parties do not provide language from the Allstate Policy or the Farmers Policy in their statements of undisputed and disputed facts. *See* Docket No. 24 at 2-3; Docket No. 31 at 2-4. The Court, however, will consider the following undisputed language from each policy as both parties provide copies of parts of the policies, identify identical language from the policies, and both parties' arguments rely on the "excess clauses" below. *See* Docket No. 24 at 4-9; Docket No. 31 at 4-8.

#### 1. Allstate Policy

If There Is Other Insurance

If the **insured person** was in, on, getting into or out of, or getting on or off, a vehicle which is insured for this coverage under another policy, coverage under this policy will be excess. This means that when the **insured person** is legally entitled to recover damages in excess of the other policy limit, **we** will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

2

Docket No. 24-2 at 40; Docket No. 31-5 at 20.

### *2. Farmers Policy*

When this coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, the loss will be paid in accordance with the following method:

1. All applicable policies will pay on an equal basis until the Policy with the lowest limit of insurance is exhausted.

2. If any "loss" remains and there:
    a. Are two or more remaining policies whose applicable limits of insurance have not been exhausted, then such policies will continue to pay in accordance with paragraph (1); o;
    b. Is one remaining policy, then such policy will continue to pay until its limits of insurance have been exhausted.

. . .

If there is other applicable insurance available under one or more policies or provisions of coverage, any insurance we provide with respect to a vehicle owned by the Named Insured or, if the Named Insured is an individual any "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

Docket No. 24-3 at 52, 53; Docket No. 31-4 at 52, 53.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

3

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Ligotti raises claims for breach of contract, statutory bad faith, and common law bad faith. Docket No. 4 at 2-3. Allstate moves for summary judgment on all of Ligotti's claims. Docket No. 24 at 2. Allstate argues that both of Ligotti's bad faith claims necessarily fail because Ligotti is not entitled to any UIM benefits from Allstate and because Ligotti fails to show that Allstate acted unreasonably. *Id.* at 8-11. Additionally, Allstate argues that it is entitled to attorney's fees on Ligotti's statutory bad faith claim

4

because it is frivolous.  *Id.* at 11-12.  Ligotti opposes Allstate's motion.  *See* Docket No. 31 at 12.

### A. Insurance Coverage

Allstate argues Ligotti is not entitled to UIM benefits under the Allstate Policy because any benefits owed would be in excess of benefits provided by the Farmers Policy.  Docket No. 24 at 8.  Ligotti responds that Allstate and Farmers are co-primary insurers, both equally responsible for those damages exceeding the tortfeasor's insurance limits and that, even if Allstate only provided excess coverage, its duty to pay under the policy was conditioned on Ligotti's damages exceeding the tortfeasor's insurance limits, not any payment or lack thereof from Farmers.  Docket No. 31 at 10.

"The interpretation of an insurance contract is a question of law."  *USAA Cas. Ins. Co. v. Anglum,* 119 P.3d 1058, 1059 (Colo. 2005).[2]  Insurance policies are to be interpreted in accordance with general rules of contract interpretation and "must be enforced as written unless there is an ambiguity in the policy language."  *Id.*  In an insurance contract, "an excess clause attempts to shift the priority of payments as between coverages when two or more policies apply to the liability."  *Allstate Ins. Co. v. Avis Rent-A-Car Sys., Inc.*, 947 P.2d 341, 346 (Colo. 1997).  "When one insurance policy is 'primary' and the other policy is 'excess' the primary insurer pays for damages up to the limits of its policy; when that policy is exhausted, the excess insurer covers any remaining damages up to the limits of its policy."  *Id.*  Determining which policy

---

[2] The parties appear to agree that Colorado law applies to the breach of contract claim in this case.  The Court will operate under the same premise.  *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

provides primary or excess coverage does not depend on the holder of the insurance and is instead decided "based on the language of the policies themselves." *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 660 (Colo. 2011). When valid competing excess clauses apply, "both 'clauses are mutually repugnant and, as such, are void.'" *Id.* at 666 (quoting *Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 764 P.2d 1191, 1199 (Colo.1988)). "This renders both insurers co-primary, meaning that both insurers must apportion the loss on an equal, dollar-for-dollar basis 'until the limits of one of the policies is exhausted; the second policy must continue to pay to its limits or until the loss has been fully compensated, whichever occurs first.'" *Id.* (quoting *Allstate*, 947 P.2d at 344).

Allstate argues that the Farmers Policy provided primary coverage for the accident because the excess clause in the Farmers Policy did not, by its terms, apply and the excess clause from the Allstate Policy did apply. Docket No. 24 at 7-8. The Court agrees with Allstate that the excess clause in the Allstate Policy applies and the excess clause in the Farmers policy does not apply to the accident.

The Allstate Policy states its UIM coverage is excess "[i]f the **insured person** was in, on, getting into or out of, or getting on or off, a vehicle which is insured for this coverage under another policy." Docket No. 24-2 at 40. Because it is undisputed that Ligotti was driving and therefore "in" a car covered by Farmers Policy, Docket No. 24 at 2, ¶ 3, Allstate's excess clause applies to Ligotti's claim. The Farmers Policy states that UIM coverage is excess "with respect to a vehicle owned by the Named Insured . . . that is not a covered 'auto' for Uninsured Motorists Coverage." Docket No. 24-3 at 53. It is undisputed that the vehicle Ligotti was driving at the time of the accident was covered

6

by the Farmers Policy, Docket No. 24 at 2, ¶ 3, and there is no argument that it would not be a "covered auto." *See id.* at 8; Docket No. 31 at 5-6. Because Ligotti was in a covered vehicle that she did not own, the excess clause of the Farmers Policy does not apply to the accident.

Ligotti, however, argues that Allstate and Farmers should be considered co-primaries even though the excess clause from the Farmers Policy does not apply to the accident. Docket No. 31 at 5. First, Ligotti argues that the policies "conflict" and result in Farmers and Allstate acting as co-primaries because a separate provision of Farmers Policy identifies a method of payment for cases when the Farmers Policy and any other policy "cover[] on the same basis, either excess or primary." *Id.* at 6 (quoting Docket No. 31-4 at 2). The provision in the Farmers Policy states that, in the case of policies that cover on the same basis, both policies "will pay on an equal basis until the Policy with the lowest limit of insurance is exhausted." *Id.* Ligotti argues that this provision applies where Farmers provides either primary or excess coverage and another policy provides either primary or excess coverage. *Id.* Allstate responds that the provision applies where the Farmers Policy and another policy both provide primary coverage or both policies provide excess coverage. Docket No. 32 at 5.

Insurance policies are to be interpreted in accordance with general rules of contract interpretation and "must be enforced as written unless there is an ambiguity in the policy language." *Anglum*, 119 P.3d at 1059. In this case, the Court does not find that the policy language is "susceptible on its face to more than one reasonable interpretation." *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) ("An insurance policy is ambiguous if it is susceptible on its face to more than one reasonable

7

interpretation.") (citation omitted).  Allstate's reading of the provision is consistent with the purpose of an excess clause.  If Ligotti's reading of the clause was correct, the excess coverage clause in the Farmers Policy would be rendered meaningless because policies would pay "on an equal basis" even where they only provided coverage in excess of another policy.  Excess coverage is designed to "shift the priority of payments as between coverages." *Avis*, 947 P.2d at 346.  A provision that required payment on an equal basis whether coverage is primary or excess would not provide any shift in the priority of payments between insurers.  The Court agrees with Allstate that the provision Ligotti highlights does not cause the policies to conflict.

Next, Ligotti argues that the Farmers and Allstate policies are "co-primary regardless of payments they do or don't owe each other [ ] at some point." Docket No. 31 at 5.  Ligotti relies on *Shelter*, 246 P.3d at 651, because in that case "what mattered between Plaintiff and Defendant was whether complying coverage was 'in effect.'"  Docket No. 31 at 5.  The Court interprets Ligotti's argument to be that every insurer should first pay the insured as if a second policy was not involved and then resolve any issues caused by excess clauses with the other insurer.  Ligotti's reliance on *Shelter* is misplaced.  The court did not rule that, where two insurers' policies would individually provide coverage, the insurers, despite the existence of an excess coverage clause, should act as co-primaries for the benefit of the insured.  Instead, the court emphasized that "the language of the policies themselves" determined which insurance was primary and held that two insurers are "co-primary" only in a situation where two valid competing excess clauses apply, thus necessitating not giving "full effect to both of them, as that would leave the insured with no coverage for liability."  *Shelter*, 246 P.3d at 660, 666.  While

the court noted that the resolution of primary and excess priorities between carriers could be inefficient and may delay payments to insureds, *id.* at 664, this observation further evidences that the court was not suggesting that insurers assume the role of co-primary and pay claims accordingly in derogation of the existence of a valid excess clause. Ligotti provides no persuasive argument that Allstate and Farmers should be considered co-primary.

Here, the Farmers Policy provided primary coverage of $1,000,000 and the Allstate Policy provided excess coverage of $100,000. Colorado law requires that UIM coverage "shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance." Colo. Rev. Stat. § 10-4-609(1)(c). Colorado courts have interpreted this to mean that UIM coverage begins where tortfeasor liability ends, meaning UIM coverage is not triggered by a settlement with a tortfeasor but instead by damages to the insured exceeding the tortfeasor's coverage limits. *See Jordan v. Safeco Ins. Co. of America, Inc.*, 348 P.3d 443, 450-51 (Colo. App. 2013). In other words, UIM coverage "stack[s]" on top of legal liability. *Id.* at 451. Additionally, when there are multiple applicable UIM policies, "the policies must be allowed to 'stack' – that is, a second policy's coverage begins where the first policy's coverage leaves off, without reducing the amount of available recovery under the second policy." *Id.* In practice this means an insurer does not have to cover damages that could be covered by a tortfeasor's liability limits if the insured settles with the tortfeasor for less than his or her insurance limits and also that an insurer may not limit its liability based on payments by a tortfeasor or other UIM policies. *Id.*

To the extent Allstate argues its duty to pay would only be triggered by payment of $1,000,000 under Farmers Policy or that settling with Farmers was dispositive of Allstate's liability, Docket No. 24 at 8, Allstate is incorrect.  A requirement that an insured exhaust a tortfeasor's liability limits is void and unenforceable under Colorado law because the UIM insurance does not cover the same injuries as the tortfeasor.  *See Tubbs v. Farmers Ins. Exch.*, 353 P.3d 924, 927 (Colo. App. 2015) ("whether the insured recovers the full amount or nothing at all from the liable party's insurer has no impact on the UIM insurer's obligation to pay benefits.  Regardless of what amount, if any, the insured receives from the liable party, the UIM insurer is only required to pay for damages in excess of the tortfeasor's legal liability coverage limit.")  Applying this principle to excess coverage, Farmers' payment does not offset Allstate's liability; Allstate is responsible for damages exceeding the limit of the Farmers Policy no matter what amount Farmers pays.  To the extent Ligotti suggests that Allstate and Farmers are both responsible for damages in any amount over the tortfeasor's liability limit, Docket No. 31 at 6, she is also wrong.  Allstate's "coverage begins where the first policy's coverage leaves off, without reducing the amount of available recovery" under the Allstate Policy.  *Jordan*, 348 P.3d at 451.

The coverage for Ligotti from the accident is calculated as follows: the tortfeasor's insurance covers Ligotti's damages up to $25,000; Farmers covers Ligotti's damages that exceed $25,000 up to the point her damages reach $1,025,000; Allstate covers Ligotti's damages that exceed $1,025,000 up to the point her damages reach $1,125,000.  Payment, or failure to make a payment, by the tortfeasor or another insurer does not change the liability of Allstate or Farmers.

Allstate is required to pay Ligotti for her damages that exceed $1,025,000. Ligotti states it is disputed whether her damages exceeded $225,000, and Allstate admits that fact is disputed. Docket No. 31 at 3, ¶ 1; Docket No. 32 at 1, ¶ 1. Allstate moves for summary judgment on all of Ligotti's claims arguing that "Allstate is entitled to judgment on all claims since the value of her UIM claim does not exceed the limits of the Farmers policy, $1,000,000." Docket No. 24 at 12. Allstate argues that Ligotti values her claim of $675,000 based on her settlement with Farmers for $575,000 and request from Allstate for $100,000 and so no coverage was due to Ligotti under the Allstate Policy. *Id.* at 8. Allstate argues that because Ligotti "admitted that her UIM claim does not exceed $1,000,000, she failed to prove that she is entitled to benefits under the Allstate policy. As such, her unreasonable delay claim fails as a matter of law." *Id.* Allstate argues that Ligotti's common law bad faith claim fails because it was not unreasonable for Allstate to deny Ligotti's claim and refuse to pay benefits on a pro rata basis. *Id.* at 9. Ligotti responds that her settlement with Farmers does not foreclose her claim with Allstate and that Allstate was required to pay Ligotti's damages as soon as her damages exceeded the tortfeasor's liability limits. Docket No. 31 at 6-7.

Although Ligotti is correct that her settlement with Farmers is not dispositive of the value of her claim,[3] there is no indication that Ligotti's insurance claim exceeds $1,025,000. Ligotti nowhere asserts that her claim exceeds that amount. Moreover, Ligotti's expert report describes Ligotti's insurance claim to Allstate as including "medical expenses of $206,386.35 with future medical care projection at $250,000 to

---

[3] Whether the insured recovers the full amount or nothing at all from a primary insurer has no impact on the obligation of an excess coverage provider to pay benefits. *See Tubbs*, 353 P.3d at 927.

$300,000, with some wage loss and scarring." Docket No. 31-3 at 4.  Ligotti does not suggest that damages for wage loss and scarring, when combined with her other damages, exceed $1,025,000.  Because there is no genuine dispute of material fact about whether Allstate was required to cover any of Ligotti's damages, and Ligotti does not argue Allstate was unreasonable under any other basis, the Court will grant Allstate's motion for summary judgment and dismiss Ligotti's claims.

### B. Attorney's Fees

Allstate seeks attorney's fees from Ligotti under Colo. Rev. Stat. § 13-17-102 because it argues her statutory bad faith claim is frivolous.  Docket No. 24 at 11-12.  Colorado's attorney fee statute provides that a court "shall award . . . reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." Colo. Rev. Stat. § 13-17-102(2).  Additionally, a court "shall assess attorney fees if . . . it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment."  *Id.* § 13-17-102(4).  An action or part of an action "lack[s] substantial justification" if it is "substantially frivolous, substantially groundless, or substantially vexatious."  *Id.*  While the contract interpretation in this case is clearly in Allstate's favor, Ligotti's arguments regarding *Shelter* were not frivolous.  As a result, the Court will deny Allstate's request for attorney fees.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 24] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED September 25, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge